## WILLIAM H. STEVENS v. WILLIAM CASTEL.

*Deed—Delivery—Evidence of—Homestead—Occupancy—Notice.*

1. Defendant conveyed a parcel of *wild* land to a *third* party, who deeded it at once to defendant's wife, no consideration being paid by *either* grantee, and the object being to so cloud the title as to prevent a levy by creditors.   Soon afterwards the husband, who retained possession of *both* deeds, which had never been *actually* delivered, left them for record, instructing the register of deeds not to deliver them to any one but himself.   He received the deeds when recorded, and placed them among his papers.   At the time of such recording he occupied the land as his homestead, and continued to reside thereon until she left him, some fifteen years afterwards.   After about eight months' separation she conveyed the land to the grantor of plaintiff (defendant still retaining possession), who brought ejectment to recover the same.   On the trial evidence of the foregoing facts was given by defendant, who also testified that he never *intended* to deliver *either* of the deeds.

   *Held,* that the question of *delivery* was properly submitted to the jury.

2. The recording of a deed raises a *presumption* of delivery to the grantee, which may be *rebutted* by proof of a contrary intent on the part of the party responsible for such recording.

3. Where the only act of a grantor looking towards a delivery of a deed was his causing the same to be recorded, he denying any actual delivery,—

   *Held,* that what he said to the register of deeds at the time he left the deed for record was part of the *res gestæ,* and admissible as explaining the *character* and *intent* of such act on his part.

4. In the case of *Gage v. Gage,* 36 Mich. 229, a deed was made by a husband to his wife for the purpose of delaying creditors, it being understood that she should exhibit it when necessary to show

| 63 | 111 |
| 78 | 242 |
| 63 | 111 |
| 87 | 352 |
| 63 | 111 |
| 95 | 409 |
| 95 | 421 |
| 63 | 111 |
| 106 | 260 |
| 63 | 111 |
| 118 | 155 |
| 63 | 111 |
| s29NW | 828 |
| 133 | ¹342 |
| 63 | 111 |
| 136 | ¹392 |
| 63 | 111 |
| d140 | ¹191 |

ownership in her. She took the deed without the husband's consent or knowledge, and put it on record.

*Held*, that the *actual* custody of the deed was as much in the wife as husband, and the *legal* control must be regarded as delivered to her.

5. A deed from a husband to a third person of a homestead, for the mere purpose of transferring the title from him to the wife, which is accomplished by the grantee at once executing a deed to her, is not void for want of her signature. The whole transaction should be treated in law as a conveyance from the husband to the wife.

6. Where a husband and wife had occupied a parcel of land as their homestead for fifteen years, when she separated from him, the husband remaining in possession of the land, and some eight months afterwards the wife conveyed the land to a third party, the husband still occupying the same, and the record showing a deed to her, which was in the husband's possession,—

*Held*, that the grantee was bound to take notice of the husband's occupancy, and inquire as to his rights in the premises.

Error to Montcalm. (Smith, J.) Argued June 16, 1886. Decided October 14, 1886.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Taggart & Denison* and *F. A. Miller*, for appellant:

The recording of a deed by direction of the grantor is a sufficient delivery to enable the grantee to hold the land as against the grantor: *Kerr v. Birnie*, 25 Ark. 225; *Corley v. Corley*, 2 Cold. (Tenn.) 520.

The recording of a deed by the grantor, with intent to pass the title and delay creditors, but intending to retain a life-estate, establishes a delivery conclusively: *Moore v. Giles*, 49 Conn. 570.

In support of claim that recording was a delivery, see *Ruckman v. Ruckman*, 32 N. J. Eq. 259; *Gage v. Gage*, 36 Mich. 229.

The statement of a grantor, made *after* the alleged delivery of a deed, as to his intention in the matter of such delivery, is not admissible: *Dawson v. Hall*, 2 Mich. 393.

Possession of land by a grantor is no notice of rights or equities in him to one who acquires an interest in the land on the faith of the recorded title: *Bloomer v. Hender-*

son, 8 Mich. 395; *Dawson v. Bank*, 15 Id. 489; *Bennett v. Robinson*, 27 Id. 26; *Humphrey v. Hurd*, 29 Id. 44; *Jeffery v. Hursh*, 45 Id. 59.

As to effect of retention of possession by the grantor, see *Howard v. Patrick*, 38 Mich. 805; *Atwood v. Bearss*, 47 Id. 74.

*Ellsworth & Lewis*, for defendant:

Defendant's statements to the register of deeds were competent evidence: *Rivard v. Walker*, 39 Ill. 413; *Hale v. Joslin*, 134 Mass. 310; *Dawson v. Hall*, 2 Mich. 390; *McCullough v. Day*, 45 Id. 554; *Western Ins. Co. v. Tobin*, 32 Ohio St. 100; 1 Greenleaf, Ev. § 110; *Deming v. Carrington*, 12 Conn. 1; *Hamilton v. State*, 36 Ind. 280; *Felt v. Amidon*, 43 Wis. 467; *Reed v. N. Y. C. R. R. Co.*, 56 Barb. 493.

The possession of defendant was notice to all the world of his rights: *Hughes v. U. S.*, 4 Wall. 232; *Ray v. Birdseye*, 5 Denio, 626; *Jones v. Marks*, 47 Cal. 242; *Landes v. Brant*, 10 How. 348; *Disbrow v. Jones*, Har. Ch. 48; *Norris v. Showerman*, 2 Doug. 16; *Woodward v. Clark*, 15 Mich. 104; *Fisher v. Fobes*, 22 Id. 454; *Russell v. Sweezey*, Id. 235.

As to effect of such possession after executing warranty deed, see *Bennett v. Robinson*, 27 Mich. 26; *Abbott v. Gregory*, 39 Id. 77:

MORSE, J. This is an action in ejectment, brought to recover 160 acres of land in the township of Bushnell, county of Montcalm. The suit was commenced May 25 1867. The case was tried in the Montcalm circuit, in December, 1885, before a jury, at which trial the defendant had verdict and judgment in his favor.

The plaintiff brings error, and insists in the outset that, upon the testimony of the defendant himself, the judgment should have been in favor of the plaintiff. The main case hangs upon the question of the delivery of a deed or deeds, executed by defendant, February 10, 1851.

This question was submitted by the circuit judge, Hon. Vernon H. Smith, to the jury, and I think rightly.

The plaintiff's counsel argue that the undisputed facts, as related by the defendant himself, conclusively establish in law a delivery, and the jury should have been directed to find for plaintiff.

It will therefore be necessary to examine the evidence of defendant as to the circumstances of the case.

In the fall of 1850 the defendant purchased the lands, then wholly wild and unimproved. In February, 1851, having no home, but a wife and children, he commenced to clear off a building spot upon the premises, and moved lumber and other materials thereon, for a house in which to live and occupy the land as a homestead.

After he had done this he executed a deed of the premises, his wife not joining therein, to a hired man, unmarried, one Solomon Mullinnex, who on the same day executed a deed of the same lands, running to Betsy A. Castel, the wife of the defendant. It is under these deeds, through mesne conveyances, that plaintiff claims title. May 11, 1866, Betsy A. Castel, who had separated from and was living apart from her husband, conveyed the premises by warranty deed to Abram Shear, and Abram Shear and wife quitclaimed to plaintiff, May 16, 1866.

It is admitted that no consideration passed from Mullinnex to defendant, or from the wife to Mullinnex or the defendant, for or on account of these conveyances.

The wife's testimony as to the purpose of, and as to the delivery of, the deeds, she being a witness on the trial for plaintiff, who is her brother, differs materially from that of the defendant, but, for the purposes of the case as it now stands, we have only to deal with his version of the transaction.

He claims that the deeds were never delivered, and were never intended to be delivered, either by himself or his wife. His story is substantially as follows: He intended to make the land his future home. He was poor, and had

nothing but the land, which he did not wish to lose. He had some debts back where he moved from to this land, and, although he meant to pay them, he wanted time in which to do so, and not lose his place in the meantime. He therefore made the deed to Mullinnex, and had him execute the deed to his wife, for the purpose of clouding the title, so that his creditors would not levy upon it. He went to the house of Edwin H. Stevens, a brother of his wife, and drew the deeds himself; executed the one to Mullinnex, and put it in his pocket; then went and found Mullinnex, called him into the house, and had him execute the other. Mullinnex never had possession of the deed from the defendant to him, and never saw it. Defendant kept the two deeds in his pocket for a few days, and then put them on a beam in the saw-mill where he was working. They remained there until in October, 1851.

In that month, being supervisor of the township, he went to the county-seat, then at Greenville, and handed the deeds to the register of deeds for record, saying to him that they did not amount to anything, but that he might put them on record, and not to deliver them to any one but himself.

After the record he took the deeds, and put them in a box among his private papers, where they have ever since remained.

He never showed the deeds to his wife, and does not know that she ever saw them. They were not locked up, however, and she could have had access to them, as she did to the other things in the house. She knew of the making of the deeds, but was not present when they were executed. She asked him once to record them, and told him she would make him a coat if he would do so. After they were recorded he told her of the record.

She left him before she deeded to Shear, and has ever

since lived apart from him. She did not take the deeds, nor offer to do so, when she went away.

Castel has resided on the premises ever since 1851, and has now 100 acres improved. At the time he recorded the deeds he had built a house upon the premises, and was living in the same, and had hired out some 40 acres to be chopped. He has paid the taxes assessed against the property every year but one.

It is claimed that the recording of the deeds is conclusive evidence of their delivery, and cases in other States are cited to sustain this proposition.

Other cases are found holding to the contrary. *Parker v. Hill*, 8 Metc. 447; *Hawkes v. Pike*, 105 Mass. 560; *Patterson v. Snell*, 67 Me. 559; *Jones v. Bush*, 4 Har. (Del.) 1; *Maynard v. Maynard*, 10 Mass. 456; *Harrison v. Phillips Academy*, 12 Mass. 455; *Walsh v. Mut. Fire Ins. Co.*, 54 Vt. 351; *Elsey v. Metcalf*, 1 Denio, 323; *Ford v. James*, 4 Keyes, 300, 315; *Kingsbury v. Burnside*, 58 Ill. 310.

These cases hold uniformly that the mere act of recording, unaccompanied by any act or word evincing an intention to deliver the deed, raises no absolute presumption. If accompanied by a declaration against such intention, the act raises no presumption whatever, and the appearance of the deed upon record does not operate as a delivery, nor supersede the necessity of proof of delivery. Some of the cases go so far as to hold that the record of the deed, standing alone, raises no presumption whatever as to delivery.

The very essence of the delivery is the intention of the parties. *Bryan v. Wash*, 2 Gilm. 557; *Gunnell v. Cockerill*, 79 Ill. 79.

And the better doctrine, in my opinion, is that of our own Court, that the recording raises a presumption of delivery, to be explained or rebutted, however, by the intention of the party recording the deed.

It has been said in our own State that under our recording laws the executing, acknowledging, and recording of a deed is presumably a delivery, unless some facts are shown against such presumption. *Patrick v. Howard,* 47 Mich. 40-45.

And it has been also held a sufficient delivery where the grantor, *intending thereby to give it effect,* left the deed with a conveyancer, to be afterwards delivered. *Thatcher v. St. Andrew's Church,* 37 Mich. 268.

Mr. Justice MARSTON in that case said:

"One of the essential requisites to the validity of a deed, so as to pass the title, is delivery. Even although in all other respects it has been properly executed, yet it does not follow that the title to the property passes; the grantor yet retains control of the instrument, and may deliver it, absolutely, conditionally, or not at all. The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction by a surrender of the instrument to the grantee, or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument."

If this be good law,—and I think it is,—it necessarily follows that any act, presumptively a delivery, will not be a delivery, if the intent to make it such is wanting, or expressly negatived by the acts or words of the grantor.

In the case before us, the only act looking towards a delivery is the recording of the deeds, and the effect of such recording must be qualified, limited, and governed by the intention of the defendant, Castel, which intention is shown by what he said to the register of deeds when he left the instruments with him for record.

It is plain to me that he never intended to deliver the deeds, and that they never were, in law, delivered, if his evidence be true.

It is contended that the circuit judge erred in permitting the defendant to state what he said to the register of deeds at the time he left the deeds for record. Inasmuch as the plaintiff relies almost entirely upon the act of record to prove a delivery, and as without such record there would be nothing in defendant's evidence tending in anywise to show a delivery, what he said to the register at the time of this act seems to me clearly to be a part of the *res gestæ,* and admissible as explaining the character and intent of his act. *Felt v. Amidon,* 43 Wis. 467; *Lund v. Tyngsborough,* 9 Cush. 36.

The two cases mainly relied upon by the counsel for plaintiff, to support the claim that there was a delivery of the deeds according to the testimony of the defendant, differ materially in their facts from the one at bar.

In *Ruckman v. Ruckman,* 32 N. J. Eq. 259, the bond and mortgage were delivered to the wife, and she was told they were hers by the husband. He made an assignment of the same to a third person, and the third person assigned to the wife. The third person was used as a medium in the trans°er, but the assignment made to him was actually delivered to him; but his assignment to the wife was never manually delivered to her, but retained by the husband. Under these circumstances it was held that the title to the bond and mortgage passed to the wife.

In the present case there was no delivery of the deed from Castel to Mullinnex, and Mullinnex never saw it; and the possession of the land, the subject of the transfer, was never given or delivered to the wife, or taken by her.

In *Gage v. Gage,* 36 Mich. 229, the deed was made, as in this case, for the purpose of delaying creditors, and deposited where his wife had access to it. She took the deed, without his knowledge or consent, and put it upon record. It was understood, however, when it was made, that she should show it when necessary to show ownership

in herself, and it was executed at her suggestion for that very purpose. This Court held that it was perfectly clear, from all the evidence, that, whether the deed was actually placed in her hands or not, it was deposited where she could make use of it for the very purpose for which it was made.

"The actual custody was as much in her as in him, and, as it was understood that she was to make use of it on occasion to show ownership in herself, *the legal control must be regarded as delivered to her.*"

This is not the present case. Mrs. Castel never had any legal control over this deed, was not authorized to use it, and never did use it.' As before said, and according to her own testimony also, although she knew where it was kept, when she left her husband for good and took her things with her, she did not take this deed, nor attempt to do so.

The action of the circuit judge in submitting the question of delivery to the jury was probably governed by the opinion of Mr. Justice CAMPBELL in Hendricks v. Rasson, 53 Mich. 577, in which it is said:

"It appeared that Richard made and recorded the deed to his wife. But it further appeared that he got it back when recorded; and there was evidence tending to show that he retained it and never delivered it, and that she never knew of it during his life-time, and denied claiming any interest in it. There were facts enough. on both sides to have the question laid before the jury, unless the mere fact of recording is *conclusive,* which there is no rule of law to maintain."

I therefore find no error in the submission of the question of *delivery* to the jury in this case.

The circuit judge instructed the jury that there was no homestead interest in the land at the time the deeds were executed, but further said to them that, if they should find that there was no delivery of the deeds until the record of them, in October, 1851, at which time Castel did have a homestead there, then the deeds would be void as to the

home 40 acres, because Mrs. Castel did not sign the deed to Mullinnex. It is claimed that this was error, and I think it was. If the deeds were ever delivered and passed the title, Mullinnex was a mere instrument in the hands of the parties for the purpose, and the only purpose, of transferring the title from the husband to the wife. In such case I do not think the deed to Mullinnex would be void without her signature.

It should be treated—the whole transaction—in law as a simple conveyance from the husband to the wife. The object of the homestead provision in this respect is to protect the interest of the wife, and these conveyances inured only to her benefit, and were not in any sense against any of her rights, or of the family, in the homestead.

But as the jury found no delivery of the deeds, the error did not affect the result of the trial, and is of no moment here.

The court also instructed the jury that, the defendant being in possession at the time of the deed of the wife to Shear, and of Shear to plaintiff, it was notice to them of his rights in the premises. This is assigned as error.

The deeds were recorded in 1851. The undisputed facts are that, from that time up to the time of the deed from Betsy A. Castel to Shear, the defendant resided upon the premises as his homestead, improving and cultivating the same in his own right. At the time of the conveyance to Shear, the wife had been living separate from her husband about eight months, and left his home and the premises without taking the deed with her or laying any claim to the land.

Under the authorities, I think Shear and the plaintiff were bound to take notice of defendant's continued occupancy of the premises, and to inquire as to his rights therein. *Stevens v. Hulin,* 53 Mich. 93; *Bennett v. Robinson,* 27 Id. 26.

If the conveyance of the wife had taken place while she and defendant were living together, the occupancy of the latter might have been presumed to have been in the right of the wife; but time enough elapsed after the separation to put the purchaser on guard, and to warrant inquiry upon his part. If he had made such inquiry, the true state of the title would at once have been communicated to him. In fact, the conveyance to Shear, followed immediately by his deed to plaintiff, looks as if the sale of the land was really from the wife to her brother, the plaintiff, who, under the circumstances, was chargeable with notice.

Upon a careful examination of the proceedings upon the trial, and the charge of the court, I am unable to find any prejudicial error.

The judgment is therefore affirmed, with costs. The record will be remanded for further proceedings under the statute, if any further proceeding is desirable by the parties.

The other Justices concurred.